**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MONIQUE PERNA and LISA CROUCH
individually and on behalf of all others
similarly situated,

    Plaintiff,

v.

AMERICAN CAMPUS COMMUNITIES, INC.,

    Defendant.
_____/

CASE NO.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## COMPLAINT

1. Defendant American Campus Communities, Inc. is the nation's largest developer, owner, and manager of private dormitory housing on college campuses. College campuses—including the University of Central Florida ("UCF"), where Plaintiffs Monique Perna's son and Lisa Crouch's daughter are students and reside in the Defendant's "Plaza on University" dorm and "The Village at Science Drive," respectively,—have been ordered closed due to the Coronavirus Disease 2019 ("COVID-19") pandemic.

2. Notably, UCF, like just about every other public and private educational institution in the country, has not only closed its classrooms, but has also taken the additional step of closing school-run dormitories because these types of high-density, shared living space accommodations are simply unsafe to occupy. This risk is particularly high in Defendant's facilities, which include shared bathrooms and common areas, and tightly packed amenities shared by hundreds of residents, resulting in a situation that might be likened to a cruise ship on land packed with college students.

3. Ignoring this peril, Defendant has placed profit over safety, and continues to demand payment (from students who have rightly returned home) for services it cannot safely provide, claiming that its dormitory facilities are still "open."

4. UCF asked its students not to return campus to prevent the spread of COVID-19 and refunded their housing cost and meal plans to the end of the spring semester.[1]  Furthermore, UCF has come forward urging companies, like the Defendant, to do the same. (See **Exhibit A**). Plaintiffs bring this action to recover room, board, and other fees for their selves and a class of people who have paid, are paying and those being harassed to pay the Defendant for services at its Florida private dormitory complexes that it cannot safely provide.

## PARTIES

5. Plaintiff Monique Perna is a citizen of Florida, residing in St. Augustine.  Ms. Perna is the guarantor and co-signer for her son, Jakes's room at Plaza on University apartments for the Fall 2019-Spring 2020 academic school year.

6. Jake Perna, like many students, took out a student loan, as well as worked part-time to cover costs associated with college.  As did many Americans, Jake was furloughed as a result of the COVID-19 pandemic.

7. Plaintiff Lisa Crouch is a citizen of Florida, residing in Tampa.  Ms. Crouch is the guarantor and co-signer for her daughter's room at The Village at Science Drive for the Fall 2019-Spring 2020 academic school year.

8. Defendant is a Texas corporation headquartered in Austin.  Defendant is the manager of "campus living" apartment complexes throughout the United States.  Defendant touts

---

[1] On March 26, 2020 UCF's Board of Trustees unanimously approved student dorm refunds, https://www.ucf.edu/…/refunds-approved-for-on-campus-housing and refunds unused dining room monies https://www.ucf.edu/coronavirus/dining-membership/refunds.

itself as "The nation's largest developer, owner, and manager of high-quality student housing communities" https://www.americancampus.com/about-us, and it operates at least 11 locations in Florida. Defendant advertises its apartments to students across the country as an alternative to on-campus living, while offering amenities specifically geared to college students, such as 24-hour fitness centers, swimming pools with a hot tub and poolside cabanas, computer labs, and university involvement.[2]

## FACTS COMMON TO ALL CLASS MEMBERS

9. This is a class action brought on behalf of all people who paid or are paying the costs of room and board and attendant service fees for the Spring 2020 academic semester for student housing in apartments managed by Defendant throughout the State of Florida.

10. The Sub-Class is brought on behalf of all people who received the debt collection communication, such as that attached hereto as Exhibit B, in an attempt to collect May's room, board and fees.

11. At the onset of the COVID-19 pandemic, these people lost the benefits of the room and board and/or the services for which they had paid or are paying. Defendant has responded to the pandemic and the resulting constructive eviction of its tenants by retaining the unearned costs and fees, implementing a policy whereby it refuses to grant any refunds to its leaseholders.

12. In or around March 2020, Florida colleges and universities announced that, because of the global COVID-19 pandemic and to protect the health and safety of the students and others, all classes would be moved online for the remainder of the Spring 2020 semester. Students who lived in on-campus housing were told to move out, such that they had no meaningful choice but to

---

[2] https://www.americancampus.com/student-apartments/fl/orlando/plaza-on-university#amenities

comply. Further, because all classes were moved online, there was no reason for students to remain near campus if they had other housing elsewhere, particularly given the health risks and fear associated with the pandemic. UCF told to "vacate" the campus and they have stayed off campus to comply with directives from the schools, as well as local, state, and federal governments.

13. Despite the constructive eviction of students at the schools for the remainder of the semester, the cessation of all campus activities for at least that same time period, and the Defendant's inability to safely provide the room, board, and amenities for which Plaintiff and class members have paid, Defendant has refused refunds to students for the unused portion of their room, board, and fees and continues to actively attempt to collect monthly rental payments despite students no longer inhabiting the complexes. Defendant is thereby profiting from this pandemic.

14. The decision to transition to online classes and to request or encourage students to leave campus were responsible decisions to make, but it is unfair and unlawful for Defendant to retain unearned fees and costs when they cannot safely provide facilities and services. Other higher education institutions across the United States, which likewise have switched to e-learning and have similarly requested that their students leave campus, have recognized the upheaval and financial harm befalling students and their families from these decisions, and they have provided appropriate refunds. That's the right thing to do. Defendant, unfortunately, has taken the opposite approach.

15. Accordingly, Defendant has improperly retained and will retain monies paid by Plaintiff and the proposed Class members for room, board, and fees, while otherwise not affording them the benefits for which they paid. Defendant has improperly retained and will retain funds for services it is not providing. No matter the excuse, Defendant's actions are unlawful and unfair, and equity demands disgorgement of the fees and monies paid and payable.

16. Plaintiff brings this class action for injunctive, declaratory, and equitable relief, and for any available legal remedies resulting from Defendant's illegal, unfair, or deceptive conduct related to retaining the costs of room, board, and fees paid by Plaintiffs and the proposed Class members after they (or the students on behalf of whom Plaintiffs and the proposed Class members paid those expenses) were told to vacate their campus residence to complete the semester.

17. This lawsuit seeks disgorgement of the prorated, unused amounts of room, board, and fees that Plaintiffs and the proposed Class members paid, but for which they (or the students on behalf of whom they paid) will not be provided the benefit.

## FACTS SPECIFIC TO PLAINTIFFS

18. Plaza on University and the Village at Science Drive are owned and managed by Defendant[3] and are the "premier student housing choice at The University of Central Florida"[4] in Orlando, Florida, serving attendees of the University of Central Florida, Valencia Community College and Full Sail University.

19. Plaintiff Perna executed a Guaranty Agreement with Defendant on December 11, 2018, incorporated within her son's Lease Agreement for a bedroom and the use of the common areas of a four-bedroom unit at Plaza on University for the Fall 2019 and Spring 2020. Plaintiff's son moved into the apartment on August 17, 2019.

---

[3] https://www.americancampus.com/about-us/portfolio/results?t=florida&owned=0&managed=0&acquired=0&sustainable=0&developed=0&oncampus=1&offcampus=1&sortBy=&sortDirection=
[4] https://www.americancampus.com/student-apartments/fl/orlando/plaza-on-university

20. Upon signing, Plaintiff Perna paid a $99 application fee and a $100 administrative fee, and she continues to pay each month $844 for room and board, $45 for parking, and $30 for utilities.

21. Plaintiff Perna renewed her lease for the Fall 2020 and Spring 2021 semesters, which came with an elevated base rent of $879 and a monthly $50 parking fee.

22. Plaintiff Crouch executed a Guaranty Agreement with Defendant on December 5, 2018, incorporated within her daughter's Renewal Lease Agreement for a bedroom and the use of the common areas of a four-bedroom unit at The Village at Science Drive for the Fall 2019 and Spring 2020.

23. Upon renewing her lease signing, Plaintiff Crouch pre-paid monthly rent of $754 for room and board, for January through April 2020. They also paid a $45 parking fee.

24. On March 1, 2020, Governor DeSantis signed an executive order directing the state health officer to declare a public health emergency and take any actions needed to protect the public health.

25. On March 13, 2020, President Trump issued a Proclamation Declaring a National Emergency COVID-19 outbreak.

26. On March 16, 2020, President Trump and the CDC issued guidance to slow the spread of the virus, advising individuals of social distancing measures, such as avoiding gatherings of more than 10 people, and recommending restrictions for establishments tending to attract mass gatherings.

27. On March 17, 2020, Florida state school officials closed K-12 public schools until April 15 and announced the suspension of mass campus gatherings, including sports events.

28. Between March 18, 2020, and March 20, 2020, all three Florida universities served by Plaza on University and the Village at Science Drive announced that all classes would transition to remote learning through the end of the Spring 2020 semester, canceling all on-campus events due to the COVID-19 pandemic.

29. On April 1, 2020, the Governor of Florida issued a statewide stay-at-home order that will go into effect Thursday, April 2, at midnight and last for at least 30 days.

30. Plaza on University and the Village at Science Drive informed students that it would remain open despite the closure of all on-campus activities for its serviced schools, and notwithstanding official recommendations of social distancing and the avoidance of groups of 10 or more people.

31. However, by Defendant's own admission, they were not able to provide the services contemplated by the lease agreements; for example, "staff work hours [were] significantly limited [resulting] in delayed response time for work orders or other inquiries" and "common area amenities" were closed.[5]

32. On March 30, 2020, Plaintiff Perna was informed that the lease was a "binding contract" and even though Defendant "understands there may be extenuating circumstances," the lease "will need to remain as it is."

33. Plaintiff Perna has paid for room, board, parking, and utilities through the end of June 2020 even though her son evacuated the dormitory in March and only returned in mid-July to collect his personal belongings.

---

[5] March 20, 2020, Email from plazaonuniversity@americancampus.com, subject "Plaza on University- COVID-19 Updates"

34. Plaintiff Crouch continued to be charged room, board, parking, and utilities through July 2020.[6]

35. Despite colleges and universities canceling all on-campus activities and transitioning to remote-only learning, Defendant's apartment complexes have refused to issue any refunds of the unused portions of room, board, and fees prepaid or continuing to be paid by leaseholders.

36. The purpose of the parties' contract was to provide housing and services while on-campus schooling is in session. This purpose was frustrated when the campus unforeseeably closed, students were no longer attending on-campus classes, and they were constructively evicted from Defendant's premises.

37. This purpose is highlighted by the fact that Defendant "lease[s] for a specific term based on the academic calendar."

38. Plaintiffs' lease with Defendant recites that, "[e]xcept as provided by law, you have no right to withhold or offset any part of your Rent for any purpose, even an Act of God, or to reduce any Rent payable to us by any of your costs or damages." Plaintiff Perna has neither withheld any rent payments to Defendant nor offset or reduced any payments to account for costs or damages, and she has otherwise fully performed under the lease. Plaintiff seeks through this action only the benefit of any and all remedies, legal and equitable, provided by law. Nor does any law require Plaintiff to defy orders to vacate college campuses and return home to quarantine, to occupy facilities and receive services that cannot be safely provided, or to recover payments made for those services.

---

[6] Crouch paid rent through April, was awarded a hardship deferment for the month of May, paid June and worked out a payment arrangement for July, despite the fact her daughter was unable to live onsite for most of March and all of April and May, due to safety concerns surrounding a communal living environment.

39. Defendant's intransigence has caused Plaintiffs harm, which increases incrementally with each monthly room, board, and fee installment Plaintiff is compelled to pay for the Spring 2020 semester.

40. Defendant's insistence that the lease has not been voided by the official response to the COVID-19 pandemic is promoting conduct that will increase the spread of the disease, contradicting directives by local, state and federal governments.

## JURISDICTION AND VENUE

41. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed Class are in excess of $5,000,000, exclusive of interest and costs, and most members of the proposed Class are citizens of the state of Florida.

42. This Court has general jurisdiction over Defendant, which conducts substantial business within Florida, and thus has significant, continuous, and pervasive contacts with the State.

43. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because the challenged fee practices have been committed in this District, and because Plaintiff suffered the alleged harm in this District.

## CLASS REPRESENTATION ALLEGATIONS

44. Plaintiff Perna brings this action as a class action under Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3) as a representative of the following Class:

> All people who paid the costs of room, board, and fees for and on behalf of students residing in Defendant's Florida "campus living" complexes for the Spring 2020 semester who moved out prior to the completion of the semester because of school closures relating to COVID-19.

45. Additionally, Plaintiff Crouch brings this action as a class action under Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3) as a representative of the following Sub-Class:

> All people who have been contacted by the Defendant, seeking to collect a debt for May's rent despite having moved out prior to the completion of the semester because of school closures relating to COVID-19.

46. Plaintiffs reserve the right to amend or modify the Class and Sub-Class definition with greater specificity or further division into Sub-Classes or limitation to particular issues, as discovery and the orders of this Court warrant.

47. Excluded from the Class and Sub-Class are the Defendant, the officers and directors of the Defendant at all relevant times, members of Defendant's immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendant has or had a controlling interest.

48. Plaintiff Perna is a member of the Class she seeks to represent.

49. Plaintiff Crouch is a member of the Sub-Class she seeks to represent.

50. Defendant has thousands of customers that have paid room, board, and fees while schools were closed, and students ordered to return home. Accordingly, members of the Class and Sub-Class are so numerous that their individual joinder herein is impracticable. The precise number of Class and Sub-Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class and Sub-Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

51. Common questions of law and fact exist as to all Class and Sub-Class members and predominate over questions affecting only individual Class and Sub-Class members. Common legal and factual questions include, but are not limited to, whether Defendant has refused to offer refunds and whether it has breached its contracts with its customers or otherwise acted unlawfully.

52. The claims of the named Plaintiff Perna are typical of the claims of the Class, in that the named Plaintiff was charged rental fees and suffered losses despite her son being ordered to leave campus and return home by school and government officials.

53. The claims of the named Plaintiff Crouch are typical of the claims of the Sub-Class, in that the named Plaintiff Crouch contacted by the Defendant, seeking to collect a debt for May's rent despite her daughter being ordered to leave campus and return home by school and government officials.

54. Plaintiffs are an adequate representative of the Class and Sub-Class because Plaintiffs' interests do not conflict with the interests of the Class or Sub-Class members Plaintiffs seeks to represent, Plaintiffs have retained competent counsel experienced in prosecuting class actions, and Plaintiffs intend to prosecute this action vigorously. The interests of Class and Sub-Class members will be fairly and adequately protected by Plaintiffs and their counsel.

55. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class and Sub-Class members. Each individual Class and Sub-Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Rescission

56. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-55 of this Complaint.

57. Plaintiffs, as well as all other Class members, were in contractual privity with the Defendant as tenants of the Defendant's facilities. These contractual agreements involving the Class members and Defendant were evidenced in writing and signed by the parties.

58. As noted above, the purpose of the contractual undertaking between the Class members (including Plaintiffs) and Defendant was to provide a "student-only private dormitory" living arrangement to student Class members. The living space provided by this arrangement was bundled with a number of amenities and conveniences that particularly catered to students attending university campuses, an exercise center, monthly resident events, computer labs, shuttle services to the campus, and university involvement.

59. There has been an "equitable breach" in this case that warrants rescission because issues of "impossibility of performance" and "frustration of purpose" have arisen.

60. As to "impossibility of performance," Defendant was obligated to provide the student Plaintiffs and other student Class members with access to common areas, an exercise center, dorm activities, and other services. However, as a result of the COVID-19 pandemic, these common areas and services became both unsafe to provide and unsafe to use.

61. To that end, it should be noted that the only private accommodation provided at SouthGate by Defendant was a bed in a shared room. Each living unit had common space shared amongst multiple residents. As such, essential daily living and hygiene functions were necessarily

performed in a shared common facility with other students that any individual student might not know well, thus presenting a great risk for COVID-19 infection.

62. Indeed, it is noteworthy that very similar dorm facilities run by the universities were closed down and the students urged to leave because the living arrangements were unsafe to occupy. This was consistent with CDC guidelines which discouraged gatherings of more than 10 people and advised that stringent "social distancing" measures be taken to avoid transmission of COVID-19. However, Defendant, because of its own selfish pecuniary interests, refused to acknowledge that the particular form of high-density housing arrangement that it provided was inconsistent with prudent safety measures.

63. In addition to that, it was simply not possible for students to fully access common areas and amenities in a prudent manner. Places such as the exercise center, transit shuttles, and computer lab would have required student Class members to group together beyond what was prudent. Even the heavily used common hallways presented such a risk.

64. For this reason, it was impossible for the Defendant to provide what was bargained for under the Class members' contracts.

65. As to frustration of purpose, the dorm-style living arrangement was offered as part of a bundled package of amenities that were a fundamental part of Defendant's performance under the contract. As noted above, Defendant's living facilities and common amenities were rendered unsafe to use as a result of the COVID-19 pandemic. The provision of these living arrangements along with the coupled amenities were the fundamental purpose of the Class members' agreements and became frustrated by the fact that they could not be safely provided or used.

66. In addition to its facilities being unsafe to use, the Defendant marketed its premises as being in close physical proximity to school and also marketed its services as being

advantageous because of a high degree of integration with campus university activities. Given that the university campuses were closed, and no campus activities were taking place because of the COVID-19 pandemic, this frustrated an essential purpose of the Class members' contracts with Defendant. Indeed, the very purpose of the Class member's contracts with Defendant was to allow the student Class members to attend school on university campuses, which was of course not possible due to the closure of the university campuses.

67. Defendant has been provided with ample notice of the Class members' desire for rescission. Indeed, not only did the Plaintiffs provide individual notice, but, as noted above, so many Class members contacted Defendant that it engaged in mass communications with Class members to present its position that no rescission would be permitted.

68. This case is suitable for rescission because the parties can be equitably restored to their original position or, if that result would not be equitable, a balance of equities can otherwise be achieved.

69. This count for rescission is pleaded in the alternative to any claim for legal relief. To the extent no remedy at law is available, rescission is appropriate.

## COUNT II
### Florida Consumer Collection Practices Act
### (Individual and Class Claim)

70. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-55 of this Complaint.

71. At all times relevant to this action Defendant is subject to and must abide by the laws of Florida, including the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, et seq.

72. Plaintiff's financial obligations imposed by her lease with Defendant is "debt" or "consumer debt" within the meaning of Florida Statute § 559.55(6)

73. Defendant's refusal to refund the unearned portion of Plaintiff's debt under the lease violates the provisions of Florida Statute § 559.72, including without limitation the proscription that, "[i]n collecting consumer debts, no person shall . . .. [c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some legal right when such person knows that the right does not exist." Fla. Stat. §§ 559.72, 559.72(9).

74. Moreover, Defendant's communications to Plaintiff regarding its refusal to refund the unearned portion of the debt violated Florida Statute § 559.72(7) insofar as those communications constituted a willful engagement "in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family."

75. Defendant's violations of the Florida Consumer Collection Practices Act directed at Plaintiff and the proposed Class render it liable for the actual damages caused thereby, additional statutory penalties, court costs and attorney fees, punitive damages, and such equitable relief as may be deemed necessary or proper, all pursuant to Florida Statute §559.77.

## COUNT III
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (Individual and Class Claim)

76. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-55 of this Complaint.

77. The student-tenants at Defendant's private dormitories, including Plaintiffs' son and daughter, have been constructively evicted from the premises, rendering Defendant in breach

of its most fundamental express obligation under the Lease Agreement, namely, to provide value for money received.

78. In performing its leases with Plaintiffs and the members of the proposed Class, Defendant has breached the implied covenant of good faith and fair dealing by:

    a.    Unfairly and in bad faith asserting that remaining in private dormitories is a reasonable option for Plaintiff and proposed Class members. Dormitories, whether on or off campus, are not designed to safely house students in the event of a pandemic, and, to stay safe, students must move out in order to practice safe social distancing in accordance with CDC recommendations.

    b.    Unfairly and in bad faith representing that its properties serve as private space and provide residence life programs to complement students' academics. However, once the schools have closed and the students it purports to serve have been forced to leave, the Defendant now does not consider its provision of room, board, and services to be tied whatsoever to the schools or to the students' academics, as it has failed to refund unearned payments for room, board, and fees.

    c.    Unfairly and in bad faith failing to refund any monies paid by the Plaintiff and proposed Class that remain unused as a result of the COVID-19 pandemic.

79. Plaintiffs and the proposed Class members have been damaged because of Defendant's breach of the implied covenant of good faith and fair dealing.

### COUNT IV
### Unjust Enrichment
### (Individual and Class Claim)

80. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-55 of this Complaint.

81. Plaintiffs and members of the proposed Class have conferred benefits on Defendant by paying and continuing to pay room, board, and fees, despite the closing of colleges and universities served by Defendant, with the attendant recommendations for social distancing and returning home.

82. Defendant has knowledge of the benefits conferred by Plaintiffs and members of the proposed Class.

83. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs and the proposed Class. Retention of those monies under the circumstances presented by the pandemic is unjust and inequitable because Defendant is charging its customers for room, board, and fees, the benefits of which Plaintiff and members of the proposed Class cannot reasonably avail themselves.

84. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the proposed Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the proposed Class.

## COUNT V
### Conversion
### (Individual and Class Claim)

85. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-55 of this Complaint.

86. Plaintiffs and members of the proposed Class had a right to be refunded the monies paid Defendant for the student-tenants' room, board, and fees after the schools those students attended were closed.

87. Defendant ignored demands for refunds from Plaintiffs and the proposed Class and intentionally withheld the unearned monies paid, inconsistent with and adverse to Plaintiffs' right, and the rights of the proposed Class, to possess those monies as their true owner.

88. Defendant thereby converted to its own use funds rightfully belonging to Plaintiffs and the proposed Class.

89. Plaintiffs and members of the proposed Class are therefore entitled to the return of the prorated, unused amounts paid for room, board, and fees that Defendant has wrongfully retained.

## COUNT VI
**Money Had and Received**
**(Individual and Class Claim)**

90. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-55 of this Complaint.

91. Defendant received monies in the form of room, board, and fee payments that were intended to be used for the benefit of Plaintiff and the proposed Class.

92. However, through the wrongful refusal of Defendant to refund the unearned portion of the room, board, and fee payments, those monies were not used for the benefit of Plaintiff and the proposed Class.

93. Moreover, Defendant has not given back or refunded the wrongfully obtained monies to Plaintiff and the proposed Class.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

    a.    For an Order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Perna as representative of the Class, and Plaintiff's attorneys as Class Counsel to represent the Class members;

    b.    For an Order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Crouch as representative of the Sub-Class, and Plaintiff's attorneys as Class Counsel to represent the Sub-Class members;

    c.    For an Order declaring that Defendant's conduct violates the statutes and laws referenced herein;

    d.        For an Order finding in favor of Plaintiffs and the Class on all counts asserted herein;

    e.        For statutory, compensatory, and punitive damages in amounts to be determined;

    f.        For prejudgment interest on all amounts awarded;

    g.        For an Order of restitution and all other forms of equitable monetary relief;

    h.        For injunctive relief as pleaded or as the Court may deem proper; and

    i.        For an Order awarding Plaintiffs and the Class their reasonable attorneys' fees, litigation expenses, and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury of all issues so triable.

Respectfully submitted,

*William "Billy" Peerce Howard, Esq.*
William "Billy" Peerce Howard, Esquire
Amanda J. Allen, Esquire
Heather H. Jones, Esquire
Florida Bar No. 0103330
Florida Bar No. 0098228
Florida Bar No. 0118974
THE CONSUMER PROTECTION FIRM
4030 Henderson Boulevard
Tampa, FL 33629
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Billy@TheConsumerProtectionFirm.com
Amanda@TheConsumerProtectionFirm.com
Heather@TheConsumerProtectionFirm.com