UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MONIQUE PERNA and LISA CROUCH
individually and on behalf of all others
similarly situated,

CASE NO.: 3:20-cv-00846-MMH-MCR

      Plaintiff,

v.

AMERICAN CAMPUS COMMUNITIES, INC.,

      Defendant.

_____/

## DEFENDANT AMERICAN CAMPUS COMMUNITIES, INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant American Campus Communities, Inc. ("ACC") moves to dismiss Plaintiffs'[1] Amended Complaint (Doc 18) in its entirety for failure to state a claim upon which relief can be granted.  In support of its motion to dismiss, ACC states as follows:

### I.  INTRODUCTION

In this putative class action, Plaintiffs seek to recoup rent monies already paid to ACC and obtain some kind of relief for "Defendant's communications to Plaintiffs regarding its refusal to refund the unearned portion of the debt."  Plaintiffs allege that they do not owe said rent monies because they—or residents for whom they acted as guarantors—elected to move out of their ACC apartments in the middle of the spring semester.  Plaintiffs claim that this decision to move out was made in response to the closure of Florida campuses and transition to online classes due to

---

[1] For purposes of this motion, Monique Perna and Lisa Crouch, individually and on behalf of all others similarly situated, are referred to as "Plaintiffs." Jake Perna and Autumn Crouch have been added as Plaintiffs in the case style of Plaintiffs' Amended Complaint. (Doc. 18.)  However, in paragraphs 7 and 8 of Plaintiffs' Amended Complaint (Doc. 18), titled "Parties", Jack Perna and Autumn Crouch are not listed as parties to this lawsuit.

COVID-19 considerations—*not anything ACC did*.  As a result, the Complaint fails to state a claim against ACC upon which relief can be granted.

Specifically, the Amended Complaint should be dismissed because: (1) Plaintiffs' apartment complexes with ACC remain open and accessible and in fact, were designated as an essential service throughout the pandemic; (2) Plaintiffs have operative lease and guaranty agreements that remain in-force and bar this action as per state of Florida tenant/landlord law no different than any other multi-family lease agreement; and (3) school closures have no bearing on the validity of those agreements and obligations of the parties under same, no different than an employer's actions would have on the tenant of any existing multi-family apartment lease.

First, Plaintiffs admit that their apartment complexes with ACC remain open.  (Amended Complaint at ¶ 33.)  COVID-19 did not and has not affected tenants' access to and use of their residences leased with ACC.  Plaintiffs allege Tenant Perna and Tenant Crouch were "forced to evacuate the dormitory in March."  (Amended Complaint at ¶¶ 23, 21[2])  The "forcing out" of students only applied to on-campus dormitories.  Plaintiffs apartment complexes are off campus apartments, and as a matter of law, remained open during the subject time period.  If tenants— including the Tenant Plaintiffs[3]—no longer occupy their leased premises, it is because they have chosen to leave because they prefer to live elsewhere.  All tenants' leases remain in full force and effect with each party obligated to meet their legal obligations under the lease.  Similarly, while

---

[2] Paragraphs in Plaintiffs' Amended Complaint are numbered incorrectly, starting after paragraph 24. The paragraph after paragraph 24 is numbered paragraph 18, and as such, all subsequent paragraphs are incorrectly numbered.  We will refer to the Amended Complaint's paragraphs using the same numbers used by Plaintiffs, although we do recognize this is confusing as there are two paragraphs 18-24.  For example, this footnote referenced paragraph 21, which is the second paragraph 21 in the Amended Complaint.

[3] Named plaintiffs Perna and Crouch are guarantors and co-signers on lease agreements with ACC, but did not reside in the premises at issue.  (*See* Complaint at ¶¶ 5-7)  Accordingly—where the distinction is necessary and without waiving any arguments as to class certification—this motion will refer to Perna, Crouch and all guarantors included in the purported class as "Guarantor Plaintiffs," whereas individuals who resided in the premises at issue and would be included in the purported class will be referred to as "Tenant Plaintiffs."

many Florida tenants in multi-family housing had negative career and financial impacts from the COVID-19 pandemic, the third-party actions of their employers did not alter the obligations of the landlord or tenant under their lease agreements.

Second, Plaintiffs signed lease and guaranty agreements remain in-force.  ACC did not ask Tenant Plaintiffs to leave.  On the contrary, ACC still has all of its binding obligations to its tenants to stay open, provide housing, and incur costs for on-site and other apartment personnel and service providers.  ACC continues to incur all expenses associated with operating its residential properties including, among other things, payment of Florida employees and property taxes to the State of Florida, which have not been abated.

After all, ACC and its personnel provide essential services under Florida law.[4]  Under Governor Ron DeSantis's orders, ACC and other landlords across the state cannot evict tenants for nonpayment.  However, tenants remain responsible for rent and any other obligations under the lease.  While the Governor's Executive Order No. 20-94 tolls foreclosures and evictions, it specifically states that ***"[n]othing in this Executive Order shall be construed as relieving an individual from their obligation to make mortgage payments or rent payments***."[5]  Plaintiffs are no exception.

Third, the third-party closures of Florida campuses in no way impact the private party contracts between tenant and landlord and do not entitle Plaintiffs to recoupment of rent.  The apartment complexes at issue in this suit are not owned, operated or governed in any way by the universities that moved in-person classes on line.  Contrary to Plaintiffs' attempts to describe the

---

[4] (*See* April 3, 2020 Executive Order Number 20-91, § 2(A) (citing U.S. Department of Homeland Security in its Guidance on the Essential Critical Infrastructure Workforce, v.2.0 (March 28, 2020, "Residential/Shelter Facilities and Services").)
[5] (April 2, 2020 Executive Order Number 20-94, § 3 (emphasis added) (extended by Executive Order Nos. 20-121 and 20-137).)

apartments at issue in this suit as "dormitories" (Amended Complaint at ¶¶ 16-17) these are privately owned, off campus multi-family dwelling units; permitted, developed, and constructed under local/municipal zoning laws and approval processes governing multi-family apartments – they are not on-campus dormitories.  Just as private real estate companies develop multi-family apartments near major Florida employers allowing tenants to be located convenient to the work place, ACC's apartments are developed near colleges and universities to be conveniently located to such.  While Plaintiffs attempt to blur the line between on-campus and off-campus housing, the distinction is critical for purposes of this suit.  Universities have the right to tell students to move out of university-owned dormitories and return to their "permanent residences" pursuant to the closure of campus.  ACC does not because, among other things, it is governed by the State of Florida landlord-tenant laws and the provisions of the lease agreements between the parties. Therefore, Plaintiffs' references to directives from universities (*e.g.*, Amended Complaint at ¶¶2, 5, and 31) are irrelevant.

As such, a university closing has no bearing on tenants', Guarantor Plaintiffs' or ACC's obligations under the lease or guaranty agreements.  Indeed, the leases specifically state "ACC "make[s] no representations or warranties that all residents of the Apartment Community will be students."  The purpose of the underlying leases was to provide housing—not to provide housing "while on-campus schooling is in session," as Plaintiffs claim.  (Complaint ¶42.)  Therefore, the purpose of the lease agreements was not frustrated, as many of ACC's tenants still need a place to live [or choose to live there] regardless of whether they are still attending classes in person, classes online, or otherwise living in the area.  The properties at issue, and the leases between landlord and tenant remain in full force and effect during the summer months as well as during school

breaks, and tenants remain obligated to pay rent during those periods or other school closures.[6]

To that end, Plaintiffs' suit—if somehow successful—would create untenable results across the country.  The validity of off-campus, non-university-owned residential leases in college towns is not driven by whether the campuses are currently open for in-person classes.  From a common-sense perspective, if Plaintiffs' contention—that they are entitled to void leases because their academic institution of choice is currently closed—was viable, the same argument would allow students living in campus-adjacent rental properties in normal circumstances to void twelve month leases if they: (1) failed out of said college; (2) decided to transfer during the school year; (3) decided to study abroad during the school year; or (4) even simply decided to move home for the summer rather than take summer school courses.  To take the analogy one step further, what Plaintiffs are asking the Court to do is no different from requiring a traditional multifamily landlord to cancel a lease because an employee who chose to live close their employer was laid off, transferred, or the company closes, or simply desired to live somewhere else due the actions of an unrelated third party.  It is not hyperbole to recognize that making a landlord's ability to collect rent for non-university owned living accommodations somehow contingent on the status of a nearby university would have long-lasting, negative ramifications on landlord-tenant law in Florida and the U.S. moving forward, in the same way that modifying tenant rights based upon actions of any particular tenant's employer would have significant ramifications for every multi-family lease in America.

## II.    BACKGROUND

Upon information and belief, named plaintiffs Monique Perna and Lisa Crouch are guarantors on residential leases at ACC-owned apartment complexes Plaza on University ("Plaza")

---

[6] Likewise, ACC is unaware of any judicial decisions holding that commercial tenants with non-essential businesses are entitled to rent refunds because they were not permitted to open under COVID-19 stay-at-home orders.

and The Village at Science Drive ("The Village"), respectively.  (Amended Complaint at ¶¶ 1, 7-8; named plaintiffs' lease and guaranty agreements are attached as Exhibits A and B.)  Both complexes are located in Orlando near the University of Central Florida's ("UCF") campus.  The residences are not on campus, nor are they owned by UCF—they are simply convenient choices for students attending school there.

Due to the COVID-19 pandemic, upon information and belief, most or all Florida universities—including UCF—closed their campuses, cancelled in-person classes and transitioned to online learning in mid-March 2020.  (*See, e.g.,* Amended Complaint at ¶ 2.)  UCF and others continued with remote instruction through the summer semester, and re-opened campus at the end of August. (*See*, *e.g.*, https://www.ucf.edu/coronavirus/document/return-to-campus-plan/.)   On April 1, 2020, Governor DeSantis entered Executive Order No. 20-91 wherein he expressly stated that "persistent interstate travel continues to pose a risk to the entire state of Florida."[7]  The Governor therefore ordered all persons in Florida to "limit their movements and personal interactions outside of their home to only those necessary to obtain or provide essential services or conduct essential activities."[8]  In sum, the Governor's order asked tenants at ACC residences across the State to avoid interstate travel and limit movements outside their residences.

The following day, on April 2, 2020, Governor DeSantis entered Executive Order No. 20-94 to suspend and toll any eviction actions as related to nonpayment of rent by residential tenants due to COVID-19.[9]  However, the order also specifically states that "[n]othing in this Executive Order shall be construed as relieving an individual from their obligation to make mortgage payments or rent payments."[10]  The Governor has extended his order four times since then, most

---

[7] April 1, 2020 Executive Order Number 20-91.
[8] *Id.* at § 1(B).
[9] April 2, 2020 Executive Order Number 20-94, § 2.
[10] *Id.* at § 3.

recently on August 31, 2020.[11]

Therefore, while tenants are not relieved from eventual rent payments, ACC and other Florida landlords are also not currently permitted to evict residential tenants for nonpayment of rent.  ACC has clearly gone above and beyond the requirements of the Executive Order suspending evictions in that it created a COVID-19 resident hardship program to provide assistance in the form of rent deferments and abatements to residents experiencing financial hardships related to COVID-19.[12]  (Amended Complaint Ex. B.)  ACC has not financially benefited from the pandemic as claimed by Plaintiffs, but rather has suffered significant revenue losses.

ACC has continued to perform under its lease obligations, keeping its off-campus apartment residences open and accessible.  As Plaintiffs recognize, Plaza and The Village informed residents that they would remain open irrespective of any school closures in the area.  (*See* Amended Complaint at ¶ 33) The complexes remain open and accessible to ACC's tenants, as is ACC's obligation (contractual and by Florida landlord-tenant law) to its tenants and guarantors. ACC has complied with CDC and governmental guidelines at their properties, such as closing common areas, fitness centers and pools.  ACC tenants are able to socially distance from all persons outside of their roommates, just as they would at any other residence (including their permanent residences where they would be also be subjected to close contact with others).However, the named plaintiffs allege that the tenants for whom they executed guaranties have elected to move out and are "no longer living on site."  (*Id.* at ¶¶ 31-32.)

On or about April 17, 2020, Plaintiffs filed their original Complaint (United States District Court, Middle District of Florida, Jacksonville Division, Monique Perna and Lisa Crouch, individually and on behalf of all others similarly situated, Plaintiffs, v. American Campus

---

[11] August 31, 2020 Executive Order Number 20-211.

[12] Named plaintiff Crouch received such a refund pursuant to ACC's resident hardship program.

Communities, Inc., Case No. 3:20-cv-00391-MMH-MCR, Doc. 1) in this Court against Defendant. The original Complaint was dismissed sua sponte by the Court on April 20, 2020. (Doc. 5[13]) Subsequently, on or about May 11, 2020, Plaintiffs filed an Amended Complaint (Doc. 9[14]) in the initial action against Defendant.  In response, on or about July 2, 2020, Defendant filed its Motion to Dismiss Plaintiffs' Amended Complaint.  (Doc. 13[15])  On July 8, 2020, counsel for Plaintiffs contacted the undersigned and asked if Defendant objected to Plaintiffs filing a Second Amended Complaint.  The undersigned counsel agreed to speak with Defendant regarding same.

However, before the undersigned counsel could respond to Plaintiffs' counsel and before this Court ruled on Defendant's Motion to Dismiss, Plaintiffs' filed a Notice of Voluntary Dismissal without Prejudice on July 10, 2020 (Doc. 15[16])  On or about July 13, 2020, this Court entered an Order of Dismissal of the initial action and directed the Clerk of Court to terminate all pending motions and close the file (Doc. 16[17]).  On or about July 29, 2020, Plaintiffs filed a second action against Defendant in this Court: Case No. 3:20-cv-00846 (hereinafter referred to as the instant action).  Plaintiffs new Complaint (Doc. 1), is based on the same facts, includes the same claims (with the addition of Count I-Rescission), and is brought against the same Defendant as the previous action.  On or about September 15, 2020, Plaintiffs filed an Amended Complaint, the subject of this Motion to Dismiss (Doc. 18).  Plaintiffs' Amended Complaint is also based on the same facts as the previous action, includes the same claims (with the addition of Count I-Rescission and Count II-Breach of Contract) and is brought against the same Defendant as the previous action. Plaintiffs' Amended Complaint is asserting claims against ACC for rescission, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, conversion,

---

[13] Doc. 5, Case #: 3:20-cv-00391-MMH-MCR
[14] Doc. 9, Case #: 3:20-cv-00391-MMH-MCR
[15] Doc. 13, Case #: 3:20-cv-00391-MMH-MCR
[16] Doc. 15, Case #: 3:20-cv-00391-MMH-MCR
[17] Doc. 16, Case #: 3:20-cv-00391-MMH-MCR

money had and received, and violations of the Florida Consumer Collection Practices Act ("FCCPA").  (Amended Complaint at ¶¶ 53-93.)  Named plaintiffs have brought these claims individually and on behalf of a putative class of people who "paid room, board, and fees for and on behalf of students residing in Defendant's Florida "premiere student housing" complexes (including Plaza on University, The Village at Science Drive, The Province Tampa, Avalon Heights, Stadium Centre, 601 Copeland, University Village Tallahassee, U Club on Woodword, University Club Apartments, Royal Village and 2nd Avenue Centre) for the Spring 2020 semester who moved out prior to the completion of the semester because of school closures relating to COVID."   Of note, the subject Amended Complaint represents Plaintiffs' fourth (4th) attempt at filing a complaint against Defendant with this Court and once again, Plaintiffs' Amended Complaint fails to state a cause of action upon which relief can be granted.  Plaintiffs should not be afforded a fifth chance.

**ARGUMENT**

**A.      Standard for Dismissal Under Rule 12(b)(6).**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6); *Boyle v. City of Pell City*, 866 F.3d 1280, 1286 (11th Cir. 2017).  In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party.  *Jones v. Coors Brewing Co.*, 378 F. Supp. 3d 1132, 1134 (M.D. Fla. 2019) (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009)).

Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Jones*, 378 F. Supp. 3d at 1134 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Torres v. Select Portfolio Serv., Inc.*, No. 8:16-CV-1330-T-30MAP, 2016 WL 3976412, at *1 (M.D. Fla. July 25, 2016) ("Indeed, conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." *Miller v. Bank of New York Mellon*, 228 F. Supp. 3d 1287, 1290 (M.D. Fla. 2017) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This requires more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Miller*, 228 F. Supp. 3d at 1290. Courts "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Dyer v. Wal-Mart Stores, Inc.*, No. 8:08-CV-747-T-17TGW, 2009 WL 10659040, at *1 (M.D. Fla. Sept. 28, 2009).

    **B.**    **Dismissal Is Appropriate Under Rule 12(b)(6) Because Plaintiffs Have Failed to State a Claim Upon Which Relief Can Be Granted.**

Plaintiffs' Amended Complaint fails to state a claim for relief and should be dismissed pursuant to Rule 12(b)(6). All of Plaintiffs' causes of action alleged fail because Plaintiffs have not been damaged by ACC. Nothing prevented the Tenant Plaintiffs from continuing to live in their apartments under the terms of their leases throughout the subject Spring semester of 2020.

The leases underlying the guaranty agreements remain operative and Plaintiffs remain bound by said leases (and guaranties). In agreeing to the lease, the Tenant Plaintiffs and Guarantor Plaintiffs:

> **ACKNOWLEDGE AND AGREE THAT THEY HAVE CAREFULLY READ AND UNDERSTAND THIS LEASE AND THAT THEY ACKNOWLEDGE THAT THIS LEASE CONSTITUTES A BINDING AND ENFORCEABLE CONTRACT BETWEEN LANDLORD, RESIDENT AND GUARANTOR.**

(Ex. A and B, Lease Agreements at 1 (emphasis in original).)  The leases remain in force, govern the conduct at issue, and bar Plaintiffs' suit.

The leases specifically state that they "start[] on the Starting Date, and end[] at noon on the Ending Date," and "*the fact that you are no longer a student does not shorten the term or reduce or limit your liability*."  (*Id.* at 4, § 2 (emphasis added).)  The status of in-person classes at Florida academic institutions—or whether the Tenant Plaintiffs are students in the first place—is not relevant.  That the Tenant Plaintiffs *have elected to move out* of their apartments has no bearing on their continuing obligations under their respective leases, which state that: "If you move out before the Ending Date, your Rent for the remainder of the Lease Term is still payable by you to us….."  (*Id.*)

Additionally, the lease agreements explicitly hold that the Tenant Plaintiffs have no right to withhold or offset any part of their rent "*for any purpose*, even an Act of God."  (Ex. A and B, Lease Agreements, page 10-11, at ¶ 3))  *See also BRE Mariner Marco Town Ctr., LLC v. Zoom Tan, Inc.*, No. 2:15-CV-284, 2016 WL 1704197, at *5 (M.D. Fla. Apr. 28, 2016) ("By the terms of the Lease Agreement, the 'events beyond tenant's control' do not excuse defendant's failure to pay rent.").  In interpreting contracts like these leases, courts must "give effect to the plain language of contracts when that language is clear and unambiguous."  *Equity Lifestyle Props., Inc. v. Florida Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009).  The rent and guaranty obligations constitute clear and unambiguous terms of a contract between Plaintiffs and ACC.  The parties are "bound by, and a court is powerless to rewrite, the clear and unambiguous terms of a voluntary contract."  *Brooks v. Green*, 993 So. 2d 58, 61 (Fla. 1st DCA 2008) (quoting *Med. Ctr. Health Plan v. Brick*, 572 So. 2d 548, 551 (Fla. 1st DCA 1990)).

Further, it is important to note that this is Plaintiffs' third attempt to assert claims for relief.

Plaintiffs' first complaint was dismissed *sua sponte* by the Court.  Plaintiffs filed an amended complaint and Defendant filed a motion to dismiss.  In response, Plaintiffs dismissed their action without prejudice and refiled this third attempt.  Plaintiff should not be given leave to amend for a fourth time.

### C.     Plaintiffs' Rescission Claim Should Be Dismissed as Plaintiffs' Complaint Fails to Plead, and Cannot Plead, the Requisite Elements.

The Complaint alleges a claim for rescission of the lease agreements between the parties on the grounds that there "has been a "equitable breach" in this case that warrants rescission because issues of "impossibility of performance" and "frustration of purpose" have arisen." (Amended Complaint at ¶ 56)  Under Florida contract law, the defense of "impossibility" may be asserted in situations "where purposes for which the contract was made, have, on one side become impossible to perform." *Bland v. Freightliner, LLC,* 206 F.Supp.2d 1202, 1208 (M.D.Fla.2002) (citing *Crown Ice Machine Leasing Co. v. Sam Senter Farms, Inc.,* 174 So.2d 614, 617 (Fla.1965)). No impossibility of performance occurred such that warrants rescission.  As noted in the Complaint, Defendant remained open throughout the terms of Plaintiffs' leases and it was Plaintiffs' decision to move out of their ACC apartments in the middle of the spring semester.

Plaintiffs' claim that there has been an "equitable breach" in this case that warrants rescissions because of issues of "impossibility of performance" and "frustration of purpose" have arisen is without merit.  Under Florida law, frustration of purpose requires that the party asserting the doctrine "finds that the purpose for which it bargained, and which purposes were known to the other party, have been frustrated because of the failure of consideration or impossibility of performance by the other party." *Hillsborough County v. Star Ins. Co.*, 847 F.3d 1296, 1305 (11th Cir. 2017).  None of those elements are present here.  The purpose of the lease—living accommodations in an apartment—has not been frustrated.  Performance remains possible by both

parties, as evidenced by the hundreds of other residents continuing to live in these apartment complexes and operate under the terms of their leases.

Plaintiffs' Amended Complaint alleges that "Defendant was obligated to provide the student Plaintiffs and other student Class members with access to common areas, an exercise center, dorm activities, and other services." (Amended Complaint at ¶ 57). This statement is completely without merit.  ACC's lease specifically provides in Exhibit A, Apartment Community Rules and Regulations:

> The following Rules and Regulations are a binding part of your Lease.
>
> …
>
> 15.  Residents agree that any and all facilities provided by Owner in the Community are provided as a gratuity and their use is not part of the rent paid by Residents. Owner reserves the right to change or limit the hours of any such facilities, or to eliminate them completely without prior written notice to Residents.  Such action shall not constitute any claim for diminished rental value by Residents or a claim for default under the terms and conditions of the Lease by Owner.

Thus, the closure of any facilities other than Plaintiffs' rental unit, which remained accessible, cannot, as a matter of clear contract language, constitute any basis for rescission or breach (equitable or otherwise).

Count I of Plaintiffs' Amended Complaint should be dismissed for failure to plead the requisite elements of a claim for rescission.

### D. Plaintiffs' Claim for Breach of Contract Should be Dismissed Because Plaintiffs Fails to Allege a Material Breach of any provision of the Lease.

Count II should be dismissed because Plaintiffs fail to allege that a material term of the contract has been breached.  Florida law requires that a claim for breach-of-contract must plead three elements: 1) a valid contract, 2) a material breach, and 3) damages. *See Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citation omitted); *J.J. Gumberg Co. v. Janis*

*Serv., Inc.*, 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003) (citation omitted); and *see also* Glover v. Liberty Mut. Ins. Co., 418 F. Supp. 3d 1161, 1171 (S.D. Fla. 2019).

When focusing on the breach of the contract, the failure to perform the contractual obligation must be central to the contract or, in other words, material. *See JF & LN, LLC v. Royal Oldsmobile-GMC Trucks Co.*, 292 So. 3d 500, 509 (Fla. Dist. Ct. App. 2020).  To determine whether the conduct rose to the level of a "material breach," one must consider the language of the contract and measure the breaching party's shortfall or failure in performance.  *Id.*

Plaintiffs' Amended Complaint alleges Defendant "breached the contract because they are unable to safely provide…services and amenities." (Amended Complaint at ¶ 69).  However, Count II fails to allege any breach of any material terms of the lease.  As set forth in Plaintiff's Amended Complaint, ACC's lease states that tenants shall have "shared use of the Common Areas" and use of "those areas to which all residents have general access."

Plaintiffs' Amended Complaint does not allege that Defendants denied Plaintiffs use or access to their residences.  In fact, Plaintiffs admit that their apartment complexes with ACC remained open.  (Amended Complaint at ¶ 33.)  COVID-19 did not and has not affected tenants' access to and use of their personal residences, including the common areas within the apartments, leased with ACC.

As set forth above, ACC's lease specifically provides that the Owner reserves the right to change or limit the hours of any such facilities, or to eliminate them completely without prior written notice to Residents, and that such action shall not constitute a claim for default under the terms and conditions of the Lease by Owner.  Therefore, the closure of any areas to which all residents have general access cannot, as a matter of clear contract language, constitute any basis for breach of contract.  ACC did not deny Plaintiffs' use of their personal residences and Plaintiffs

have not identified any breach of the terms of the Plaintiffs' leases.  Plaintiffs have certainly not

alleged any *material* breach.  As such, Plaintiffs claim for breach of contract should be dismissed.

   **E.   Plaintiffs' Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Should Be Dismissed Because the Express Terms of the Contract Govern and Plaintiffs Fail to Allege That an Express Term of the Contract Has Been Breached.**

   There are two restrictions on causes of action for breach of the implied covenant of good

faith and fair dealing—both of which are present here and fatal to Plaintiffs' claim.  First, the

implied covenant cannot be invoked to override express terms of an agreement between the parties.

*Shibata v. Lim*, 133 F. Supp. 2d 1311, 1318 (M.D. Fla. 2000); *Insurance Concepts & Design, Inc.*

*v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1234 (Fla. 4th DCA 2001).  Second, a claim for breach

of the implied covenant of good faith and fair dealing cannot be maintained under Florida law

absent an allegation that an express term of the contract has been breached.  *Centurion Air Cargo,*

*Inc. v. United Parcel Service Co.*, 420 F.3d 1146, 1151-52 (11th Cir. 2005); *Shibata*, 133 F. Supp.

2d at 1318.

   Plaintiffs owed rent under the express terms of their lease and guaranty agreements—they

cannot use the doctrine in an attempt to override those terms.  Moreover, Plaintiffs fail to point to

an express term of the contract that has been breached.  Plaintiffs vaguely allege that ACC is in

breach "of its most fundamental express obligation…to *provide value* for money received."

(Amended Complaint at ¶ 71 (emphasis added).)  They do not cite to or identify a specific provision

in support of this conclusory contention (*see id.* at ¶¶ 70-73).  *Degutis v. Financial Freedom, LLC*,

978 F. Supp. 2d 1243, 1263 (M.D. Fla. 2013) (holding that because plaintiff "fails to identify a

breached contract term, the good faith and fair dealing claim, which requires a breach, is

untenable") (quoting *Gibson v. Chase Home Fin., LLC*, No. 8:11-cv-1302-T-23TBM, 2011 WL

6319401, at *5 (M.D. Fla. Dec. 16, 2011)).  As a result, Plaintiffs have failed to state a claim for

relief under Florida law.  *See Shibata*, 133 F. Supp. 2d at 1318 ("The covenant must relate to the performance of an express term of the contract, and it is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements."); *see also Focus Mgmt. Grp. USA, Inc. v. King*, 171 F. Supp. 3d 1291, 1300 (M.D. Fla. 2016) ("[A] breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation.").

Plaintiffs' claim also fails because to allege a breach of the implied covenant, a party must demonstrate a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but, rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.  *Shibata*, 133 F. Supp. 2d at 1319.  ACC did nothing to frustrate the agreed purpose or deprive Plaintiffs of the benefits of the agreement.  Plaintiffs' allegations make that clear.  Their claim for breach of the implied covenant of good faith and fair dealing should be dismissed.

**F.     Plaintiffs' Claims for Unjust Enrichment and Money Had and Received Should Be Dismissed Because a Valid and Enforceable Contract Exists, and Plaintiffs' Complaint Fails to Plead, and Cannot Plead, the Requisite Elements for Either Claim.**

Plaintiffs' claims for unjust enrichment (Count IV) and money had and received (Count VI) are barred by the existence of the written lease and guaranty agreements.  Plaintiffs admit that those express contracts govern here.  (*See* Amended Complaint at ¶¶ 18 and 18 (discussing execution of lease and guaranty agreements), ¶ 42 ("The purpose of the parties' contract…"), ¶ 44 ("not able to provide the services contemplated by the lease ageements…").

"Upon a showing that an express contract exists, an unjust enrichment claim will fail."

*E.g.*, *Degutis*, 978 F. Supp. 2d at 1265; *see Alhassid v. Bank of America, N.A.*, 60 F. Supp. 3d 1302, 1322 (S.D. Fla. 2014) ("[E]xpress contracts, the authenticity of which Plaintiffs do not contest, do in fact govern the subject of Plaintiffs' dispute."); *see also Atlantis Estate Acquisitions, Inc. v. DePierro*, 125 So. 3d 889, 893-94 (Fla. 4th DCA 2013) (finding that trial court "erred in using unjust enrichment to return [rent] money to tenants because unjust enrichment could not apply where an express contract existed which allowed the recovery").

Likewise, "the presence of an express contract precludes recovery on a quasi-contractual remedy such as money had and received." *1021018 Alberta Ltd.*, 2011 WL 1103635, at *6; *Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1370 (S.D. Fla. 2007). "The thought behind that cause of action [for money had and received] is that, *in the absence of evidence of some express specific agreement*, the law will assume that one who receives and holds money that belongs to another has impliedly assumed the obligation of returning it and is, accordingly, in law indebted to the owner for it." *Berry*, 497 F. Supp. 2d at 1370 (emphasis in original).

Moreover, Plaintiffs do not and cannot plead the requisite elements for either claim. The elements of an unjust enrichment are a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof. *E.g.*, *Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1220 (S.D. Fla. 2015). There is nothing "inequitable" about ACC's retention of rent it is owed under the lease agreements and express terms contained in same. Plaintiffs' claim relies on the incorrect contention that Plaintiffs and the putative class "cannot reasonably avail themselves" of room and board (Complaint at ¶ 77)—even though Plaintiffs admit that their apartments "remain open" (*id.* at ¶ 33).

When a defendant has given adequate consideration to a plaintiff for the benefit

conferred—as ACC has, in the form of living accommodations—a claim of unjust enrichment fails.  *Farm Auto Ins. Co. v. Physicians Group of Sarasota, LLC*, 9 F. Supp. 3d 1303, 1312 (M.D. Fla. 2014).  After all, the action of unjust enrichment "exists to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity."  *See 1021018 Alberta Ltd. v. Netpaying, Inc.*, No. 8:10-CV-568-T-27MAP, 2011 WL 1103635, at *5 (M.D. Fla. Mar. 24, 2011).  Plaintiffs cannot meet this standard.

For the same reasons, Plaintiffs do not and cannot plead the requisite elements for money had and received.  *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1361 (S.D. Fla. 2014) (explaining that a "claim for money had and received is treated the same (and requires the same showing) as a claim for unjust enrichment").  "Florida law recognizes the general rule that an action for money had and received…can be maintained where money is paid under a mistake of fact or where money has been obtained through fraud, imposition, extortion or undue advantage."  *1021018 Alberta Ltd.*, 2011 WL 1103635, at *6 ("This quasi-contractual action is maintained based on the fiction of an implied promise to repay.").  None of those circumstances are present here—Plaintiffs did not commit a mistake of fact and ACC did nothing rising to the level of fraud, imposition, extortion or undue advantage.  All ACC did was accept and retain rent payments due under the terms of the lease agreement.  Plaintiffs' money had and received claim requires that "the pleader has alleged facts which show that an injustice would occur if money were not refunded."  *Garcia*, 43 F. Supp. 3d at 1391.  Plaintiffs fail to make such showing—and cannot make such a showing—because no injustice has occurred.[18]

---

[18] Indeed, ACC lost significant money as a result of the COVID-19 pandemic like many other essential (and non-essential) businesses.  Yet, it still made the decision to offer financial hardship rent abatement programs, that it had no obligation to offer and that Plaintiffs now call "unfair debt collection practices."  There is no injustice to Plaintiffs here.

G.      **Plaintiffs' Conversion Claim Should Be Dismissed Because the Complaint Fails to Plead, and Cannot Plead, the Requisite Elements.**

Under Florida law, conversion is the unauthorized assumption and exercise of the right of ownership over property belonging to another.  *In re Challa*, 186 B.R. 750, 759 (Bankr. M.D. Fla. 1995); *see also Edwards v. Landsman*, 51 So. 3d 1208, 1213 (Fla. 4th DCA 2011) ("[T]o state a claim for conversion, one must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property.").  In order to establish a claim for conversion of money, a plaintiff must demonstrate, by a preponderance of the evidence: (1) specific and identifiable money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so.  *1021018 Alberta Ltd.*, 2011 WL 1103635, at *4.

Under the facts alleged in Plaintiffs' Amended Complaint, Plaintiffs do not and cannot meet the second and third elements necessary for their conversion claim to proceed.  They no longer have a right to possess the money at issue and do not allege that ACC took possession of their property without permission.  *See Rana Fin., LLC v. City Nat'l Bank of New Jersey*, 347 F. Supp. 3d 1147, 1154 (S.D. Fla. 2018) (allegations did not meet legal definition of conversion because there was no "unauthorized act," as plaintiff never alleged that defendants took possession of property without permission).  The pleadings on their face demonstrate that ACC did not commit an "unauthorized act" to deprive Plaintiffs of any money.  (Amended Complaint at ¶¶ 79-83.)  *See Rana*, 347 F. Supp. 3d at 1153 ("The essence of the tort is not the acquisition of the property; rather, it is the wrongful deprivation.").  Plaintiffs paid rent owed under the lease—of their own accord and volition—just as they had in all preceding months.  (Amended Complaint at ¶¶ 23, 20-21.)  ACC's mere acceptance and retention of rent was and has always been authorized under the terms of the lease agreements at issue.  Therefore, Plaintiffs' conversion claim fails and should be

dismissed.

### H. Plaintiffs' FCCPA Claim Should Be Dismissed Because There Is No Violation as a Matter of Law and Plaintiffs' Complaint Fails to Plead, and Cannot Plead, the Requisite Elements.

"The language of the FCCPA confirms the statute's intent is to eradicate *abusive* conduct." *Trent v. Mortg. Electronic Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1363 (M.D. Fla. 2007). The Complaint, on its face, makes it clear that no such abusive conduct occurred here.  Plaintiffs' "debts" were and are legitimate.  ACC merely sent a "friendly reminder" that the rent was due. (*See* Complaint at Ex. B.)  Moreover, this "friendly reminder" advised tenants and guarantors of ACC's "pledge is that every American Campus Communities resident will continue to have a home during this crisis regardless of their ability to pay rent on a timely basis." (*Id*.)  Then it referred tenants and guarantors to financial hardship resources and options that were both offered by the government and directly by ACC.  (*Id*.)  Nothing about ACC's conduct meets the standards of unlawful or abusive in violation of the FCCPA.  Specifically, Plaintiffs fail to state a plausible claim for relief under Florida Statute § 559.72(9).  To show a violation of Section 559.72(9), "it must be shown that *a legal right that did not exist was asserted* and that the person had actual knowledge that the right did not exist."  *Read v. MFP, Inc.*, 85 So. 3d 1151, 1155 (Fla. 2d DCA 2012) (emphasis in original) (quoting *Pollock v. Bay Area Credit Serv., LLC*, No. 08-61101-CIV, 2009 WL 2475167, at \*9 (S.D. Fla. Aug. 13, 2009)).

Plaintiffs' rent obligations do not constitute illegitimate debts, nor has ACC asserted legal rights that did not exist.  *See Bentley v. Bank of America, N.A.*, 773 F. Supp. 2d 1367, 1373 (S.D. Fla. 2011) ("If Plaintiff attempts to amend this claim he must delineate the conduct at issue as to each Defendant, allege facts showing knowledge or intent as to each Defendant, and identify facts showing how the debt at issue was illegitimate or what legal right was asserted and how that legal

right somehow did not exist as to each Defendant.").  ACC had a right to collect the rent under the terms of the leases, as evidenced by the undisputed fact that the Putative Class *paid room, board, and fees*, and now simply wants it refunded (*see* Amended Complaint at ¶ 45).  Plaintiffs' claim fails on the face of the pleadings.  If ACC had a right to collect the rent under the terms of the leases, the debt is legitimate, and therefore, refusing to refund the rents is not a violation of the FCCPA.

The debts at issue are legitimate, but even if they were not, Plaintiffs still fail to plead the intent requirements necessary for their FCCPA claim to survive dismissal.  Section 559.72 is not a strict liability statute.  *Kelly v. Davis*, No. 3:10-cv-392, 2014 WL 12515345, at *10 (N.D. Fla. July 17, 2014).  The FCCPA requires an allegation of knowledge or intent by the debt collector in order to state a cause of action.  *Deutsche Bank Nat'l Trust Co. v. Foxx*, 971 F. Supp. 2d 1106, 1114-15 (M.D. Fla. 2013).  To meet the requirements of Section 559.72, a plaintiff must do more than merely show that the defendant's claim is not legitimate; a plaintiff must also show that the defendant *knows* the claim is not legitimate, a separate issue.  *Kelly*, 2014 WL 12515345, at *10 (emphasis in original).  Plaintiffs are thus required to demonstrate that ACC acted with "actual knowledge of the impropriety or overreach of a claim."  *Finster v. U.S. Bank Nat'l Ass'n*, 245 F. Supp. 3d 1304, 1318 (M.D. Fla. 2017).  Constructive knowledge is not sufficient and a plaintiff may not recover if the creditor merely should have known that the debt was not legitimate.  *Id.* at 1318.

Plaintiffs fail to adequately allege that ACC acted with such knowledge or intent.  (*See* Amended Complaint at ¶¶ 88-93.)  Plaintiffs merely quote the language in the statute; they do not make specific allegations as to ACC's knowledge (Amended Complaint at ¶ 91.).  *Smith v. Univ. Community Hosp., Inc.*, No. 8:18-CV-270, 2019 WL 118045, at *7 (M.D. Fla. Jan. 7, 2019) ("To

properly plead FCCPA claims, the plaintiff must allege knowledge or intent by the alleged debt collector."). These kind of conclusory allegations (*see* Amended Complaint at ¶¶ 91-92) "that simply track the statutory language from the FCCPA are insufficient." *Smith*, 2019 WL 118045, at *7-8 ("Conclusory allegations that track statutory language are insufficient to state a claim under Section 559.72(9). [Plaintiff's] complaint simply claims [defendant] violated Section 559.72(9) and tracks that statute's language. So, his complaint fails to state a claim for relief under Section 559.72(9)."). As a result, even if the legitimacy of the debts was deemed a fact question that could survive dismissal, Plaintiffs' claim still fails because it lacks any pleading as to knowledge or intent necessary to support a Section 559.72(9) cause of action.

Plaintiffs also fail to state a plausible claim for relief under Section 559.72(7). Plaintiffs have not pled this cause of action with any particularity so as to put ACC on any kind of notice as to how its conduct could have risen to abuse or harassment. (*See* Amended Complaint at ¶ 92.) Plaintiffs just vaguely contend that ACC's communications "regarding its refusal to refund the unearned portion of the debt" somehow violated the FCCPA. (*Id.*). But a complaint alleging a violation under Section 559.72(7) must include enough facts to "satisfy the purpose and frequency elements of a statutory claim under the FCCPA." *Smith*, 2019 WL 118045, at *8 (quoting *Locke v. Wells Fargo Home Mortg.*, No. 10-60286-CIV, 2010 WL 4941456, at *2–3 (S.D. Fla. Nov. 30, 2010)). Plaintiffs' claim fails to do so—it includes no mention of frequency. (Complaint at ¶¶ 88-93.) Plaintiffs do not plead that phone calls were placed, that repetitive requests were made, or that abusive or harassing language was ever used. (*See id.*) Instead, Plaintiffs merely state that ACC sent a *single* communication in an attempt to collect May's room, board and fees. (*Id.* at ¶ 22.) There is nothing abusive or harassing about that communication. (*See* Exhibit B (also referred to as Exhibit 2) to Plaintiffs' Amended Complaint.) Tenants and guarantors were simply notified

about a balance due and, in the same communication, offered the opportunity to apply for financial assistance.[19]   Accordingly, Plaintiffs' barebones Section 559.72(7) allegations cannot survive dismissal.

## III.   CONCLUSION

For the foregoing reasons, the Court should grant ACC's motion and dismiss Plaintiffs' Amended Complaint in its entirety with prejudice, and grant ACC such other and further relief as the Court deems just and proper.

Respectfully submitted

SAALFIELD SHAD, P.A.

___*s/   Jenifer S. Worley*_____
**JENIFER S. WORLEY, ESQUIRE**
Florida Bar Number: 160377
**KATHRYN A. ADAMS, ESQUIRE**
Florida Bar Number: 64441
jworley@saalfieldlaw.com
kadams@saalfieldlaw.com
mpeters@saalfieldlaw.com
ccobb@saalfieldlaw.com
245 Riverside Avenue, #400
Jacksonville, Florida 32202
904/355-4401 (phone)
904/355-3503 (facsimile)
***Attorneys for Defendant***

---

[19] Any resident who applied for the COVID-19 resident hardship program for the months of April and/or May received an abatement (rent was waived).  For residents who have applied for the COVID-19 resident hardship program for the months of June, July and August rent installments, ACC continues to abate many of the applicant requests.  If abatement has not been granted, ACC has offered a payment plan to the residents.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 6th day of October, 2020 the foregoing document has been electronically filed with the Clerk of the Court using the CM/ECF System, which caused copies to be served via email upon all parties of record:

**William "Billy" Peerce Howard, Esquire**
**Amanda J. Allen, Esquire**
**Heather H. Jones, Esquire**
The Consumer Protection Firm
4030 Henderson Boulevard
Tampa, FL 33629
Billy@TheConsumerProtectionFirm.com
Amanda@TheConsumerProtectionFirm.com
Heather@TheConsumerProtectionFirm.com

SAALFIELD SHAD, P.A.

___*s/   Jenifer S. Worley*_____
**JENIFER S. WORLEY, ESQUIRE**
Florida Bar Number: 160377
**KATHRYN A. ADAMS, ESQUIRE**
Florida Bar Number: 64441
jworley@saalfieldlaw.com
kadams@saalfieldlaw.com
mpeters@saalfieldlaw.com
ccobb@saalfieldlaw.com
245 Riverside Avenue, #400
Jacksonville, Florida 32202
904/355-4401 (phone)
904/355-3503 (facsimile)
*Attorneys for Defendant*