**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MONIQUE PERNA and JAKE PERNA,
individually and on behalf of all
others similarly situated,

       Plaintiffs,

vs.                                                           Case No. 3:20-cv-846-MMH-LLL

AMERICAN CAMPUS
COMMUNITIES, INC.,

       Defendant.
_____/

**O R D E R**

       **THIS CAUSE** is before the Court on Defendant American Campus Communities, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint Counts I and II and Count "VII" as to Monique Perna and Jake Perna Individually Only (Doc. 61; Motion) filed on September 10, 2021. In the Motion, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure (Rule(s)), "Defendant, American Campus Communities, Inc. ("ACC"), moves to dismiss Counts I and II and part of Count VII of Plaintiffs' Second Amended Complaint (Doc. 55) in its entirety for failure to state a claim upon which relief can be granted." See Motion at 1. On October 1, 2021, Plaintiffs filed a response in opposition to the Motion. See Plaintiff's Response to Defendant American Campus Communities, Inc.'s Motion to Dismiss Plaintiff's Second Amended

Complaint Counts I and II and Count "VII" as to Monique Perna and Jake Perna Individually Only (Doc. 63; Response). Recently, on March 11, 2022, and May 4, 2022, ACC filed notices of supplemental authority in support of its Motion. See Defendant's Notice of Filing Supplemental Authority in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 76 & 86). This matter is ripe for the Court's consideration.

## I. Standard of Review

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the

pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

## II.     Background[1]

Plaintiffs, individually and on behalf of all others similarly situated, bring this action against ACC, "the nation's largest developer, owner, and manager of 'high-quality student housing' at colleges and universities throughout Florida," to recover money paid for room, board and other services that they allege ACC could not safely provide due to the COVID-19 pandemic. See Plaintiffs' Second Amended Complaint (Doc. 55; Second Amended Complaint) ¶¶ 1-5.  While enrolled as a student at the University of Central Florida (UCF), Jake Perna entered into a lease agreement with ACC to rent an apartment for the Fall 2019 and Spring 2020 school terms (the Lease Agreement).[2]  Id. ¶ 11.  Plaintiff Monique Perna guaranteed and co-signed the Lease Agreement.  Id. ¶ 10. Plaintiffs allege that, pursuant to the Lease Agreement, ACC improperly collected and retained their rent money from March of 2020 until June 2020, when in-person classes at UCF and schools across the country were cancelled due to the COVID-19 pandemic and many students returned home to their families.  See id. ¶¶ 24-39.[3]

---

[1]     In considering the Motion, the Court must accept all factual allegations in the Second Amended Complaint as true, consider the allegations in the light most favorable to Plaintiffs, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994).  As such, the facts recited here are drawn from the Second Amended Complaint and may well differ from those that ultimately can be proved.

[2]     He later renewed the lease for the Fall 2020 and Spring 2021 semesters.  Second Amended Complaint ¶ 27.  The 2020/2021 lease is not at issue in this action.

[3]     Previously, Autumn Crouch and her mother, Lisa Crouch, were also named plaintiffs in this action as lessee and guarantor, respectively, of Autumn Crouch's lease, along with the

-4-

Monique Perna first initiated this action on July 29, 2020, asserting claims for rescission, violations of the Florida Consumer Collection Practices Act, Florida Statutes sections 559.55, et. seq. (FCCPA), breach of implied covenant of good faith and fair dealing, unjust enrichment, conversion, and money had and received. See Complaint (Doc. 1). On August 25, 2020, ACC moved to dismiss the Complaint in its entirety for failure to state a claim. See Defendant American Campus Communities, Inc.'s Motion to Dismiss Plaintiffs' Complaint (Doc. 9). Rather than filing a response to ACC's first motion to dismiss, Monique Perna filed an Amended Complaint (Doc. 18) on September 15, 2020, adding a claim for breach of contract. See Amended Complaint (Doc. 18) ¶¶ 67-69. The following day, the Court entered an Order (Doc. 19) denying ACC's motion as moot.

On October 6, 2020, ACC filed a motion to dismiss Plaintiffs' Amended Complaint, see Defendant American Campus Communities, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint (Doc. 25; Motion to Dismiss the Amended Complaint) and Monique Perna filed a response in opposition on October 20, 2020, see Plaintiffs' Response in Opposition to Defendant, American

---

Perna's. However, on December 15, 2021, Lisa Crouch and Autumn Crouch filed a Notice of Voluntary Dismissal with Prejudice as to the claims raised by them. See Joint Stipulation of Voluntary Dismissal of Claims Raised by Lisa Crouch and Autumn Crouch (Doc. 72). The following day, the Court entered an Order (Doc. 73) dismissing their claims. Accordingly, the claims remaining before the Court for purposes of resolving the instant Motion are Monique and Jake Perna's claims only and the Court limits its recitation of the facts and procedural history to these Plaintiffs.

Campus Communities, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 30; Response to Motion to Dismiss Amended Complaint). ACC filed two notices of supplemental authority in support of its motion to dismiss. See Defendant's Notice of Filing Supplement Authority in Support of Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 42 & 50). On July 19, 2021, the Court held a hearing on the Motion to Dismiss the Amended Complaint at which the parties presented oral argument. See Clerk's Minutes (Doc. 51). At the conclusion of the hearing, the Court announced that it would grant, in part, and deny, in part, the motion. Id. The Court entered an order the following day specifically dismissing the claims for breach of the implied covenant of good faith and fair dealing, unjust enrichment, conversion, money had and received, and a violation of subsection 9 of the FCCPA, with prejudice. See Order (Doc. 52). The Court dismissed the remaining claims for rescission, breach of contract, and a violation of subsection 7 of the FCCPA, without prejudice and permitted Plaintiffs to file an amended complaint by August 20, 2021. Id. On the day of the Court's deadline, Monique Perna, now joined by Jake Perna, filed the Second Amended Complaint in which they allege claims for rescission (Count I) and breach of contract (Count II) with respect to the Lease Agreement, as well as an FCCPA claim under subsection (7) of that statute (Count VII).[4] See Second

---

[4] Although the Second Amended Complaint contains only 3 counts, Plaintiffs mistakenly label the third and final count as "Count VII." To avoid confusion the Court follows the misnomer.

Amended Complaint. ACC then filed the instant Motion and Plaintiffs filed a response opposing dismissal of their claims for rescission and breach of contract but agreeing to dismiss their claim under the FCCPA. See Response to Motion to Dismiss Second Amended Complaint. As such, the Court finds that to the extent ACC's Motion seeks dismissal of the FCCPA claim in "Count VII," the Motion is due to be granted. With this background the Court turns its attention to ACC's requests that the Court dismiss the Perna's claims in Counts I and II.

### III. Discussion

#### a. Rescission (Count I)

Rescission of a "contract amounts to the unmaking of a contract, or an undoing of it from the beginning, and not merely a termination . . . ." Bland v. Freightliner LLC, 206 F. Supp. 2d 1202, 1206 (M.D. Fla. 2002)[5] (quoting Wilson v. Par Builders II, Inc., 879 F. Supp. 1187, 1190 (M.D. Fla. 1995) (quotations and citations omitted)). "It is an action of an equitable nature." Id. (quoting Wilson, 879 F. Supp. at 1190). To state a claim for rescission under Florida law, a plaintiff must allege the following:

> (1) the character or relationship of the parties; (2) the making of a contract; (3) the existence of fraud, mutual mistake, false representation, impossibility of performance, or other ground for rescission or cancellation; (4) the party seeking rescission had rescinded the contract and notified the other party; (5) [if] the

---

[5] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

-7-

> moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible; and (6) the moving party has no adequate remedy at law.

See Longo v. Campus Advantage, Inc., No. 8:20-CV-2651-KKM-TGW, 2022 WL 605304, at *3 (M.D. Fla. Mar. 1, 2022) (quoting Bland, 206 F. Supp. 2d at 1206) (internal quotations omitted).

Here, the parties dispute only whether Plaintiffs have adequately alleged the third and fifth elements of their rescission claim. With regard to the third element, Plaintiffs allege that impossibility of performance and frustration of purpose are grounds for rescission of the Lease Agreement. See Second Amended Complaint at ¶¶ 85-98. In the Motion, ACC argues that "[n]o impossibility of performance occurred as would support the remedy of rescission." Motion at 11. ACC contends that Plaintiffs have failed to allege that there was a failure of consideration or impossibility as required to allege impossibility of performance. Id. As to frustration of purpose, ACC maintains that the purpose of the Lease Agreement was to provide living accommodations and any changes at the university resulting from the COVID-19 pandemic did not frustrate that purpose. See id. at 10-13. Moreover, ACC contends that Plaintiffs did not "offer to restore the contracting party to the status quo," as required under the fifth element of rescission. Id. at 14. According to ACC, Plaintiffs do not adequately allege that they removed their possessions from the

apartment and relinquished their rights under the Lease Agreement. See id. at 14-15.

In response to ACC's arguments, Plaintiffs insist that it was impossible to comply with CDC guidelines in the apartment that they rented from ACC. See Response at 7-8. Plaintiffs contend that the core purpose of the Lease Agreement with ACC was for ACC to "provide housing that would facilitate in person learning at UCF's campus." Id. at 6. According to Plaintiffs, "the educational purpose of the contract was entirely frustrated, warranting invocation of the doctrine of frustration of purpose." Id. at 7. With regard to whether they adequately allege an offer to restore the benefits from the contract to ACC, "there can be no reasonable assertion that there was any reluctance to surrender the rented rooms." Id. at 12.

"Under Florida law, 'equity will not usually order rescission unless the condition of the parties may be restored as it existed prior to the execution of the contract.'" Bland, 206 F. Supp. 2d at 1208 (quoting Hibiscus Associates Ltd. v. Board of Trustees of Policemen and Firemen Retirement System of City of Detroit, 50 F.3d 908, 917 (11th Cir. 1995)). In the parties' filings, there appears to be some confusion surrounding the factual basis for Plaintiffs' allegation that they offered to restore the benefits of the contract to ACC. In the Motion, ACC contends that although "Perna offered to move out effective April 1, 2020, . . .

there is no allegation that Perna then removed personal belongings and relinquished possession of the unit." Motion at 14-15. Plaintiffs respond that

> ACC is simply incorrect about the content of communications with ACC regarding Plaintiff Jake Perna. To start with, it appears that ACC has confused the Perna emails with those pertaining to another resident who is not a named Plaintiff, Zachary Ott. These Ott emails (Doc. 55-3, pp. 7-12) were included because Jake Perna's mother, Monique Perna, was a correspondent in a number of them.

Response at 9. However, it is Plaintiffs who cite to the Ott emails in the Second Amended Complaint as support for their allegation that "[o]n March 28, 2020, Defendant was put on notice that the Perna Plaintiffs sought the terminate [sic] the lease agreement, vacate his bedroom and return the property to the Defendant. (See Ex. C, p. 10-11)." See Second Amended Complaint ¶ 29; see also Exhibit C: Email Correspondence (Doc. 55-3). Indeed, Plaintiffs specifically cite to an email from David Ott regarding a lease for his son, Zachary Ott, in which Mr. Ott explains his intent to move his son out if ACC does not agree to waive rent during the months the UCF campus is closed. See Email Correspondence at 10-11. Plaintiffs also cite to ACC's email in response to Mr. Ott in alleging that ACC acknowledged the Pernas' intent to move Jake Perna home. See Second Amended Complaint ¶ 30 ("In response to the request to terminate and offer to return the property, thereby restoring the parties to their respective positions before the contract, the Defendant replied, '[a]lthough we understand you (sic) decision to move your son home, their rental installment is

-10-

due on the 1st.' (Ex. C, p. 8-9)."). ACC's email exchange with Mr. Ott, regarding his son Zachary, neither of whom are named plaintiffs in the instant action, does not lend factual support to Plaintiffs' allegation that the Pernas satisfied the fifth element necessary to state a claim for rescission. "Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control." Simmons v. Peavy-Welsh Lumber Co., 113 F.2d 812, 813 (5th Cir. 1940).[6] Here, the Email Correspondence attached to the Second Amended Complaint shows that Zachary Ott offered to move out of his apartment but does nothing to support Plaintiffs' allegation that the Perna Plaintiffs offered to restore benefits to ACC in March of 2020. And, while Plaintiffs suggest that they put ACC "on notice" that they "sought to" terminate the Lease Agreement and vacate the premises, nowhere in the Second Amended Complaint do Plaintiffs assert that Jake Perna actually vacated the premises or otherwise returned control over the unit to ACC. Notably, in the first Amended Complaint, Plaintiffs represented to the Court that Jake Perna did not remove his personal belongings from the apartment until months later in mid-July. See Amended Complaint ¶ 23. Monique Perna's emails attached to the Second Amended Complaint demonstrate only that on April 1, 2020, she requested to terminate the 2019/2020 Lease Agreement and re-lease the apartment in the

---

[6]   In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

-11-

fall of 2020 if in-person classes resume. See Email Correspondence at 4-5. They contain no suggestion that Jake Perna was vacating the apartment at that time.[7] As the Court cautioned Plaintiffs in the hearing held on July 19, 2021, "[n]otice of a desire to rescind is one element, but a separate element is the attempt to restore the benefits. Those are two different things." See Transcript of Motion Hearing held on July 19, 2021 (Doc. 53). Here, Plaintiffs fail to present any factual allegation to support a plausible claim that they attempted to return control over the apartment to ACC before the termination of the Lease Agreement.

The only other allegation related to the Plaintiffs' purported offer to restore the benefits of the agreement to ACC is a conclusory assertion that "[t]his case is suitable for rescission because the parties can be, or were offered

---

[7] In the Second Amended Complaint, Plaintiffs also allege

> [t]he Perna Plaintiffs' intention, and repeated requests, to rescind the lease and return the property back to Defendant was undeniably memorialized in an e-mail sent May 18, 2020, which was followed by service of a letter sent via certified mail, dated May 20, 2020. (See Perna Recission Letters, attached as Exhibit F).

See Second Amended Complaint ¶ 32. In this letter, Monique Perna did instruct ACC to put Jake Perna's unit "back into the rental pool." See Exhibit F: Perna Letter (Doc. 55-6). However, this instruction specifically pertained to Jake Perna's lease for the Fall 2020 and Spring 2021 semesters, not the Lease Agreement which is the subject of the claim for rescission. Id. In the Second Amended Complaint, Plaintiffs seek only money "paid for room, board, parking, and utilities through the end of June 2020," and allege only that "Defendant refuses to return monies paid for part of the month of March and the months of April, May and June [2020] . . . ." See Second Amended Complaint ¶¶ 34-35. Indeed, the auto withdrawal statement attached as Exhibit G in support of Plaintiffs' claims extend only to June 2020. See Doc. 55-7. Thus, this communication regarding the Fall 2020 and Spring 2021 lease agreement has no bearing on whether Plaintiffs sufficiently offered to restore the benefits of the Fall 2019 and Spring 2020 Lease Agreement the obligations from which Plaintiffs seek relief.

to be, equitably restored to their original position or, if that result would not be equitable, a balance of equities can otherwise be achieved." Second Amended Complaint ¶ 97. However, absent any factual allegations supporting this conclusion, it is insufficient to survive a motion to dismiss. Compare Longo, 2022 WL 605304, at *6 (finding substantively indistinguishable allegation insufficient to support fifth element of a rescission claim) with Lawrence v. FPA Villa Del Lago, LLC, No. 8:20-CV-1517-VMC-JSS, 2021 WL 2144758, at *3 (M.D. Fla. Mar. 4, 2021) (holding plaintiff adequately alleged fifth element of rescission claim where complaint additionally contained factual allegations that student vacated and thoroughly cleaned the apartment). Although "Florida law allows rescission where restoration to the status quo is impossible," see Bland, 206 F. Supp. 2d at 1208, the party seeking rescission still must offer to return the parties to their original position. See id.; see also Longo, 2022 WL 605304, at *6; see also Response at 12. Plaintiffs have failed to provide any factual allegations that they made any such offer to ACC. In the absence of such an allegation, Plaintiffs have failed to assert a plausible claim for rescission of the Lease Agreement under Florida law. Because Count I is due to be dismissed for Plaintiffs' failure to allege the fifth element of their rescission claim, the Court need not determine whether Plaintiffs adequately alleged any grounds for rescission as required under the third element. To the extent ACC seeks dismissal of the rescission claim in Count I, the Motion is due to be granted.

### b. Breach of Contract (Count II)

The remaining claim before the Court is the Perna Plaintiffs' claim for breach of contract in Count II. To state a claim for breach of contract under Florida law, a plaintiff must allege: "(1) a valid contract; (2) a material breach; and (3) damages." See Beck v. Lazard Freres & Co., LLC, 175 F.3d 913, 914 (11th Cir. 1999) (citing Abruzzo v. Haller, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)). ACC argues that Plaintiff's breach of contract claim should be dismissed because Plaintiffs have "fail[ed] to allege a material term of the contract has been breached." Motion at 16. ACC contends that Plaintiffs have merely alleged that occupying the interior common areas became inconvenient due to the pandemic, but such does not amount to a material breach of any term of the contract. See id. at 16-17. Further, ACC asserts that there are no allegations supporting Plaintiffs' claim that ACC breached the Lease Agreement by failing to provide maintenance services, only that ACC notified tenants that its response time to work orders could be delayed due to staffing shortages. Id. at 17.

In the Response, Plaintiffs contend that ACC ignores the fact that UCF and other institutions found "similar university-run facilities were unreasonably dangerous and needed to be vacated as a result of the COVID-19 pandemic." Motion at 12. Further, Plaintiffs assert that ACC could not guarantee the safe use of the apartments because such use depended on the

-14-

actions of other individuals and "whether performance is factually impossible or commercially impracticable is a question of fact, not of law." Id. at 13 (citing Seaboard Lumber Co. v. United States, 308 F.3d 1283, 1292 (Fed. Cir. 2002)). As to the maintenance services, Plaintiffs argue that ACC's statement that its response times would be delayed constituted a breach of the Lease Agreement. Id. at 13-14.

In the Second Amended Complaint, Plaintiffs identify two different provisions of the Lease Agreement that they allege ACC breached. First, Plaintiffs quote the provision stating:

> (t)ogether with the other residents of the Apartment, your shared use of the Common Areas in the Apartment and the Apartment Community (for purposes of this Lease, 'Common Areas' are those areas within the Apartment to which you have access without going into another Bedroom and, within the Apartment Community, those areas to which all residents have general access); Your sole (if Bedroom is Private) or shared (if Bedroom is Shared) use of your furniture within your Bedroom; and your shared use of all appliances and furniture within the Common Areas of the Apartment." (Ex. A, p.3 and Ex. B, p. 3).

Second Amended Complaint ¶ 100. Plaintiffs allege that "Defendants breached the contract because they are unable to safely provide these common area amenities within each unit . . . ." Id. ¶ 101. However, Plaintiffs do not allege or otherwise identify any provision in the Lease Agreement, implicit or otherwise, that guaranteed a living space free of infectious disease. Nor do Plaintiffs allege that they were prohibited from accessing the common areas of the apartment.

See generally id. Instead, Plaintiffs allege that because "residents shared a kitchen, dining room, living room, and laundry room," it was impossible to comply with CDC guidelines regarding congregate housing without orchestrating a "well-choregraphed dance with no more than two residents being outside of their private bedroom at one time." Id. ¶¶ 54-60. But the Lease Agreement reflects that Plaintiffs contracted for shared use of the common areas within their apartments, which notwithstanding the COVID-19 pandemic, necessitated coordinating amongst tenants. And while the COVID-19 pandemic created additional obstacles to navigating such a living situation, Plaintiffs do not allege that they were denied access to the common areas within their apartment such that it could amount to a material breach of the Lease Agreement.

Plaintiffs additionally allege that ACC breached the following provision of the Lease Agreement:

> Offer(s) 24 hour response to emergency maintenance service requests. For after-hours emergencies, immediately call the after hours phone number and explain the situation. Instructions will be provided to contact the proper service personnel. You agree to complete a written notification […] within a reasonable time of the immediate emergency notification. For non emergency requests, please call during posted manager office hours. You must also notify us promptly in writing […] at the Manager's address of any needed non-emergency repair or maintenance service (that is, one that does not pose a hazard to the health and safety of you or others.) (Ex. A, at 9; Ex. B, at 15).

Id. ¶ 101. According to Plaintiffs, ACC breached this provision of the contract when it sent an email stating that to prevent the spread of COVID-19 and to support social distancing, "[s]taff work hours are being significantly limited, which may result in delayed response time for work orders or other inquiries." See Exhibit I: Maintenance Letter (Doc. 55-9). The Maintenance Letter does not support a claim that ACC materially breached the maintenance provision of the Lease Agreement. The Maintenance Letter does not state that ACC would no longer be responding to work orders. And Plaintiffs do not allege that they even submitted a work order, let alone one that was not resolved or addressed within a reasonable time. Plaintiffs' allegations that ACC merely notified its residents, in anticipation of staffing limitations, of the possibility that work orders could be delayed, does not plausibly state that ACC materially breached the Lease Agreement. Because Plaintiffs have failed to allege any material breach of the Lease Agreement with ACC, Plaintiffs' claim for breach of contract is due to be dismissed and the Motion is due to be granted.[8]

---

[8] The Court notes that even if Plaintiffs had adequately alleged a material breach, Plaintiffs' claim is completely devoid of any allegations of damages as required to state a claim for breach of contract under Florida law. Thus, Plaintiffs' claim is due to be dismissed for this reason as well. See Longo, 2022 WL 605304, at *6 (citations omitted).

Accordingly, it is

**ORDERED:**

1. Defendant American Campus Communities, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint Counts I and II and Count "VII" as to Monique Perna and Jake Perna Individually Only (Doc. 61) is **GRANTED**.

2. The Second Amended Complaint (Doc. 55) is **DISMISSED**.

3. The Clerk of the Court is **directed** to terminate all pending motions and deadlines as moot and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 26th day of May, 2022.

*[signature]*
**MARCIA MORALES HOWARD**
United States District Judge

lc28

Copies to:
Counsel of Record